IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHN DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 3:20-cv-00728 |
| v. ) | |
| ) | JUDGE CAMPBELL |
| DAVID B. RAUSCH, *Director of the* ) | MAGISTRATE JUDGE |
| *Tennessee Bureau of Investigation, in his* ) | FRENSLEY |
| *official capacity*, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the Court are cross-motions for summary judgment filed by Plaintiff John Doe (Doc. No. 29) and Defendant David B. Rausch, Director of the Tennessee Bureau of Investigation ("Rausch") (Doc. No. 32). For the reasons discussed below, Plaintiff's motion will be granted in part and Rausch's motion will be denied.

### I. BACKGROUND

**A. Tennessee's Sexual Offender Registry**

Tennessee did not have a sex offender registration law prior to 1994. In that year, however, the Tennessee General Assembly, concerned with the potential actions of sexual offenders after they had served their sentences, adopted legislation requiring the TBI to "establish, maintain, and update a centralized record system of sexual offender registration and verification information." 1994 Tenn. Pub. Laws, ch. 976 § 7(a). Although different provisions have governed the treatment of registrants over the years, the court will, for convenience, refer to each of the successive laws on that topic as "the Act."

The Act, in its original form, required registration for all individuals convicted of any one of a number of identified sexual offenses, "unless the offender had been wholly released without supervision from incarceration, probation, or parole prior to January 1, 1995." *Doe v. Haslam*, No. 3:16-CV-02862, 2017 WL 5187117, at *1 (M.D. Tenn. Nov. 9, 2017) (Crenshaw, C.J.) (citing 1994 Tenn. Pub. Laws, ch. 976 § 3(2)–(3)). The Act did not require in-person registration or reporting; instead, offenders were required to register and periodically update their information with the TBI by completing and returning paper forms. 1994 Tenn. Pub. Laws, ch. 976 §§ 4, 5. The information in the registry was expressly designated as confidential, with the exception that the TBI or a local law enforcement agency could "release relevant information deemed necessary to protect the public concerning a specific sexual offender." *Id*. § 7(c).

In the ensuing decades, however, the Tennessee General Assembly repeatedly amended the Act to expand its scope, increase its reporting requirements, and reduce the level of confidentiality of registry information. For example, in 1997, the General Assembly amended the Act to provide that, for all qualifying offenses committed on or after July 1, 1997, certain information concerning an offender "shall be considered public information" and made available online by the TBI. 1997 Pub. Acts, ch. 461, § 2. However, until 2003, the Act did not expressly restrict where an offender could live, work, or travel. In 2003, the General Assembly enacted legislation prohibiting an offender from knowingly: (i) establishing a residence or accepting employment within 1,000 feet of a school, a child care facility, or the home of the offender's victim or the victim's immediate family member; (ii) coming within 100 feet of the victim; (iii) establishing a residence or other living accommodation with a minor who was not the offender's own child; or (iv) establishing a residence with the offender's own minor child, if any child of the offender had been the offender's victim or if the offender's parental rights had been or were being

2

terminated. 2003 Tenn. Pub. Acts, ch. 95, § 1. Chief Judge Crenshaw of this district has recounted the statutes' long history of more than two dozen revisions in *Doe*, 2017 WL 5187117, at *1. In short, Tennessee's sexual offender registration system progressed from a relatively simple system, dedicated to information gathering and tracking, into a far-reaching structure for regulating the conduct and lifestyles of registered sexual offenders—in many cases, for the rest of their lives. The court will briefly summarize some of the key provisions in their current form.

1. Initial Eligibility and Levels of Offender

The current version of the Act, the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act ("SORVTA"), like the versions before it, dictates that individuals convicted of certain enumerated offenses must register with law enforcement for inclusion on the registry database maintained by the TBI. Offenses that require registration are mostly ones that, on their face, contain a sexual element, such as serial indecent exposure, aggravated rape, and rape of a child. Tenn. Code Ann. § 40-39-202(20)(A)(vii), (31)(A), (D). The Act divides registrants into "sexual offenders" and "violent sexual offenders," based primarily on the particular offense of which the person was convicted.[1] The term "violent sexual offenders" encompasses not only "sexual offenders who use physical violence" but also "[r]epeat sexual offenders" and "sexual offenders who prey on children." *Id*. §§ 40-39-201(b)(1), 40-39-202(20), (30)–(31). A (non-violent) sexual offender may petition to be removed from the registry after ten years, and his petition will be considered in light of a number of factors, including his history of compliance with the Act's restrictions. *Id*. § 40-39-207(a). A violent sexual offender, however, will remain on the registry for the remainder of his life, regardless of his compliance or lack of additional offenses. *Id*. § 40-39-207(g)(2).

---

[1] A separate category exists for "violent juvenile sexual offenders," *Id*. § 40-39-202(28), which is not relevant to this case.

3

### 2. Registration and Updating Information

An offender must provide a laundry list of information under penalty of perjury, including (but not limited to) the offender's name, address, date and place of birth, social security number, information about the offender's offense(s) of conviction, copies of the offender's driver license and passports, and a "complete listing of the offender's electronic mail address information, including usernames, any social media accounts the offender uses or intends to use, instant message, other internet communication platforms or devices, and the offender's username, screen name, or other method by which the offender accesses these accounts or websites." *See* Tenn. Code Ann. § 40-39-203(i). The Act provides that much of this information, including the offender's photograph, address and employer, "shall be considered public information" and must be made available to the public through a web page. *Id*. § 40-39-206(d).

The offender has an ongoing duty to keep this information up to date. "Within forty-eight (48) hours of establishing or changing a primary or secondary residence, establishing a physical presence at a particular location, becoming employed or practicing a vocation or becoming a student in this state, the offender shall register or report in person" with the appropriate law enforcement agency. *Id*. § 40-39-203(a)(1). An offender also has 48 hours to report any "change in any other information given to the registering agency by the offender that is contained on the registration form" or any "material change in employment or vocation status." *Id*. § 40-39-203(a)(4), (6). The offender has "three (3) days, excluding holidays" to report any change in his "electronic mail address information, any instant message, chat or other internet communication name." *Id*. § 40-39-203(7).

4

3. In-Person Reporting

The Act also requires periodic in-person reporting with the offender's designated law enforcement agency. Violent sexual offenders must "report in person during the months of March, June, September, and December of each calendar year, to the designated law enforcement agency, on a date established by such agency, to update the offender's fingerprints, palm prints and photograph, as determined necessary by the agency, and to verify the continued accuracy of the information in the TBI registration form." *Id*. § 40-39-204(b)(1). Other sexual offenders must report in person once per year. *Id*. § 40-39-204(c). At the sexual offender's check-in, or the violent sexual offender's first check-in, he is required to pay administrative fees not to exceed $150 to help cover the costs of his monitoring. *Id*. § 40-39-204(b)(1), (c).

4. Residence and Work Restrictions

A registered offender may not

> knowingly establish a primary or secondary residence or any other living accommodation or knowingly accept employment within one thousand feet (1,000') of the property line of any [1] public school, [2] private or parochial school, [3] licensed day care center, [4] other child care facility, [5] public park, [6] playground, [7] recreation center, or [8] public athletic field available for use by the general public.

Tenn. Code Ann. § 40-39-211(a)(1). Moreover, if an offender's victim was a minor, the offender may not "knowingly reside or conduct an overnight visit at a residence in which a minor resides or is present." *Id*. § 40-39-211(c)(1). There is an exception to this latter prohibition if "the offender is the parent of the minor." *Id*. But this exception is, in turn, subject to exceptions of its own; that is, even if it otherwise would apply, the exception to the prohibition is inapplicable under certain circumstances, including when "[a]ny minor or adult child of the offender was a victim of a sexual offense or violent sexual offense committed by the offender." *Id*. § 40-39-211(c)(1)(B).

5

5. Movement Restrictions

An offender cannot knowingly "[b]e upon or remain on the premises of any building or grounds of any public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field available for use by the general public in this state when the offender has reason to believe children under eighteen (18) years of age are present." *Id*. § 40-39-211(d)(1)(A). An offender also cannot knowingly "[s]tand, sit idly, whether or not the offender is in a vehicle, or remain within one thousand feet (1,000') of" the facilities covered under Section 40-39-211(d)(1)(A) "when children under eighteen (18) years of age are present, while not having a reason or relationship involving custody of or responsibility for a child or any other specific or legitimate reason for being there." *Id*. § 40-39-211(d)(1)(B).

6. Additional Restrictions Related to Children

An offender may not be "alone with" a minor in a "private area." *Id*. § 40-39-211(k)(2). The Act defines a "private area" as "any real or personal property, regardless of ownership, where the conduct of the offender is not readily observable by anyone but the minor or minors alone with the offender," potentially including individual rooms of a building. *Id*. § 40-39-211(k)(1)(B). "Alone with" is defined to mean that the offender is in the presence of a minor in a "private area," and there is no other adult "present in the area" who is conscious and able and willing to come to the minor's aid. *Id*. § 40-39-211(k)(1)(A)(i). However, if the offender is in a private area "where the offender has the right to be," he is not "alone with" a minor if the offender is engaged in an "otherwise lawful activity" and the minor's presence is "incidental, accidental, or otherwise unrelated to the offender's lawful activity." *Id*. § 40-39-211(k)(1)(A)(ii).

### B. Plaintiff's Conviction and Inclusion on Registry

In 1998, while living in Tullahoma, Tennessee, Plaintiff sexually molested his five-year-old daughter on two occasions. (Doc. No. 36-2; Doc. No. 39 ¶¶ 2-3). Plaintiff has a master's degree in social work and was a therapist for almost 30 years, specializing in therapy of children and families. (Doc. No. 39 ¶ 4). At the time of his offenses, Plaintiff was in private practice as a clinical social worker. (*Id*. ¶ 5). Plaintiff was convicted of two counts of Aggravated Sexual Battery and sentenced to eight years in prison. (Doc. No. 40 ¶¶ 1-2; Doc. No. 36-2). Plaintiff was released from prison in 2006 with community supervision for life. (Doc. No. 39 ¶ 7; Doc. No. 36-1 at PageID # 256, 267).[2] Since his release from prison in 2006, Plaintiff has registered on the Tennessee sex offender registry. (Doc. No. 39 ¶ 7). Plaintiff is classified as a violent sexual offender and an offender against children, requiring him to be registered for life and to report to law enforcement on a quarterly basis. (*Id*. ¶ 6; Doc. No. 40 ¶ 5).

### C. Procedural Background

On August 25, 2020, Plaintiff filed this case against Rausch, pursuant to 42 U.S.C. § 1983, claiming SORVTA's retroactive lifetime registration requirements violate the Ex Post Facto Clause (Count I). Additionally, Plaintiff claims that SORVTA is unduly vague in violation of the Due Process Clause of the Fourteenth Amendment (Count III) and restricts and interferes with his free speech rights in violation of the First Amendment (Count IV). (Doc. No. 1).[3] Plaintiff seeks declaratory and injunctive relief, as well as an award of his costs and reasonable attorney fees. (*Id*. at 27-28). Plaintiff moves for partial summary judgment on Counts I and III (Doc. No. 28), and Rausch moves for summary judgment on all remaining claims (Doc. No. 32).

---

[2] Plaintiff's community supervision terminated in 2010. (Doc. No. 36-1 at PageID # 267).

[3] The Court previously dismissed Count II and the free exercise claim in Count IV. (Doc. No. 23).

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party, and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). "The standards ... for summary judgment do not change when, as here, 'both parties seek to resolve [the] case through the vehicle of cross-motions for summary judgment.'" *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 387 (6th Cir. 2016) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

### III.    ANALYSIS

**A.    Ex Post Facto Application of the Act**

The U.S. Constitution provides that "[n]o State shall ... pass any ... ex post facto Law." U.S. Const. art. I § 10, cl. 1. For a law to fall within the ex post facto prohibition: (1) it must be retroactive – that is, the law must apply to events occurring before its enactment, and (2) it must be punitive (as opposed to civil). *See Lynce v. Mathis*, 519 U.S. 433, 441 (1997); *Does # 1-5 v. Snyder*, 834 F.3d 696, 699 (6th Cir. 2016) ("the Constitution's ban on Ex Post Facto laws does not bar all retroactive lawmaking, but only retroactive punishment."). Here, the parties do not dispute that the Act is retroactive as applied to Plaintiff. Rather, they disagree as to the second element of the ex post facto claim, whether the Act is punitive. To determine whether a law is punitive, courts consider: (1) whether the legislature intend to impose punishment; and (2) if not, whether the statutory scheme is so punitive in either purpose or effect as to negate the State's intention to deem it civil. *See Smith v. Doe*, 538 U.S. 84, 92 (2003); *Synder*, 834 F.3d at 700. The parties agree that the Tennessee General Assembly did not intend for SORVTA to be punitive. (*See* Doc. No. 31 at 8; Doc. No. 33 at 7). Accordingly, the Court turns to whether the effects of the Act qualify as punishment.

To assess whether a law is so punitive in effect so as to negate the State's intention to deem it civil, courts refer to the factors noted in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168–169 as useful guideposts. *See Smith v*, 538 U.S. at 97. The *Mendoza–Martinez* factors most relevant to this analysis are "whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose." *Id*. Courts consider the foregoing *Mendoza–Martinez*

factors "in relation to the statute on its face." *Seling v. Young*, 531 U.S. 250, 262 (2001) (citing *Hudson v. United States*, 522 U.S. 93, 100 (1997)); *see id.* ("In *Hudson* … this Court expressly disapproved of evaluating the civil nature of an Act by reference to the effect that Act has on a single individual."). Thus, the Court must decide whether the Act is punitive without reference to the effect that the Act has on a single individual, including Plaintiff.

In *Reid v. Lee*, 597 F. Supp. 3d 1177, 1191-1200 (M.D. Tenn. 2022), Judge Trauger determined that the effects of lifetime compliance with the Act is punitive for Ex Post Facto Clause purposes as applied to offenders. *See also Doe #1 v. Lee*, 518 F. Supp. 3d 1157, 1204 (M.D. Tenn. 2021) (Richardson, J.) (same). This Court finds *Reid's* Ex Post Facto Clause analysis persuasive, and notes that Rausch's pending motion is substantively the same as his motion for summary judgment filed in *Reid*. (*Compare* Doc. No. 33 at 1-19 and Doc. No. 66 in Case No. 3:20-cv-00050). Accordingly, the Court concludes that the effects of lifetime compliance with the Act is punitive as applied to Plaintiff for Ex Post Facto Clause purposes. Because the retroactive imposition of lifetime compliance violates the Ex Post Facto Clause as applied to Plaintiff, he is entitled to summary judgment on this claim.

The Court will not reach Plaintiff's two remaining claims (Counts III, IV), as the Court has already resolved of the case on ex post facto grounds. *See Doe #1*, 518 F. Supp. 3d at 1205 (declining to address First Amendment and due process clause challenges to the Tennessee Sexual Offender and Violent Sexual Offender Registration Verification and Tracking Act as applied to offenders convicted of sexual battery, where court found the Act to be unconstitutional as a violation of Ex Post Facto Clause as applied to offenders). It is "a well-established principle" that a court "will not decide a constitutional question if there is some other ground upon which to dispose of the case." *Bond v. United States*, 572 U.S. 844, 855 (2014) (citations omitted).

B.  Relief

Plaintiff requests a permanent injunction, declaratory judgment, and attorney's fees in his Complaint. In briefing, neither party addressed any of the factors considered in connection with a request for a permanent injunction, why declaratory relief is appropriate (in inappropriate), or the issue of attorney's fees. Therefore, the Court will order, in the accompanying Order, supplemental briefing from the parties regarding the scope of the injunction and the issues of declaratory relief and attorney's fees.

IV.  CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment will be granted as to Count I and Rausch's motion for summary judgment will be denied. As a result of this opinion, no claims remain pending in this case. However, the above-stated issues regarding remedies remain pending and will be addressed by the parties pursuant to the accompanying Order.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE